TEMPORARY LABOR PROCUREMENT AGREEMENT

This Temporary Labor Procurement Agreement ("Agreement") is entered into between Wegmans Food Markets, Inc. ("Wegmans") and the Vendor identified on the signature page to this Agreement ("Vendor").

This Agreement sets forth the terms under which Vendor will provide Services to Wegmans, as further described below. Wegmans and the Vendor hereby agree as follows:

ARTICLE 1 - SCOPE OF PERFORMANCE

1.1   Purpose and Vendor Qualifications. The purpose of this Agreement is to specify the detailed terms and conditions between the parties concerning the supplemental staffing services ("Services") to be provided by Vendor, which will be designated in one or more Statements of Work ("SOW") subject to this Agreement, in each case as executed by the parties from time to time. Vendor will select and assign Vendor employees (hereinafter referred to as "Vendor Assigned Employees") to perform services for Wegmans as needed by Wegmans from time to time, under Wegmans direction and supervision in an environment controlled by Wegmans. Each SOW will reference this Agreement and be signed by both parties. Each SOW will include a description of the Services to be provided, including: the specific skills, experience, and training required for the services to be rendered by the Vendor Assigned Employees; the pricing and payment schedule for the Services; and any other special terms applicable to the specific SOW. Each SOW, together with the terms of this Agreement, is a separate contract and will be effective as of the date signed by authorized representatives of both Vendor and Wegmans.

1.2   While this is not a exclusive relationship, Wegmans has agreed that Vendor will be its preferred vendor for these Services. If Wegmans uses another vendor to fill requisitions for vendor Assigned Employees, Wegmans shall notify Vendor prior to Wegmans contacting said vendor to fill such requisitions.

ARTICLE 2 – PRICING, PAYMENT

2.1   Services. Prices and payment terms for the Services provided will be set forth in each SOW. In addition to the prices identified in each SOW, Wegmans is responsible for the reasonable expenses incurred by Vendor while performing Services under this Agreement, which will also be detailed in the relevant SOW and approved by Wegmans in advance. Vendor will render invoices to Wegmans for Services rendered and expenses incurred on the terms set forth in the SOW. Prices will include applicable taxes. Any taxes shall be stated separately on Vendor's invoice. Unless otherwise specified all weekly Service invoices will be payable within 45 days following the date of their receipt by Wegmans.

2.2   Audit. Wegmans reserves the right, upon giving Vendor at least 15 days' advance notice, to audit Vendor's records related to any Services purchased hereunder during Vendor's normal business hours. Vendor also agrees to comply with records search requests pertaining to Services purchased hereunder, and will provide Wegmans with copies of relevant records upon request of Wegmans.

ARTICLE 3 –  CONFIDENTIAL INFORMATION

3.1       Confidentiality. During the term of this Agreement each party (the "Disclosing Party") may, from time to time, communicate information to the other party (the "Receiving Party") or its employees, or the Receiving Party or its employees or agents may learn or acquire certain information from the Disclosing Party, including but not limited to: business, technical and financial information and other proprietary information of the Disclosing Party, including, without limitation, computer programs, technical drawings, algorithms, know-how, formulas, processes, methodologies, models, tools, ideas and inventions (whether patentable or not), customer information, business and contractual relationships, business forecasts, marketing and merchandising plans, and other technical, business, financial, customer and product development plans, forecasts, strategies and information, confidential employee information such as social security numbers or birthdates, any and all of which to the extent previously, presently, or subsequently disclosed to the Receiving Party is hereinafter referred to as "Confidential Information" of the Disclosing Party. Information shall be

1

considered to be Confidential Information (a) if the Disclosing Party, orally or in writing, has advised the Receiving Party of its confidential nature; (b) if, due to its character or nature, a reasonable person in a like position and under like circumstances as Receiving Party would treat it as confidential; or (c) if Disclosing Party has marked it as such; provided, however, that failure to mark any of the Confidential Information as confidential shall not affect its status as part of the Confidential Information under this Agreement. The Receiving Party and its employees and agents will hold in confidence all such Confidential Information of the Disclosing Party and will not disclose any part thereof without the prior written consent of the Disclosing Party. The Receiving Party will take reasonable precautions to limit the use and circulation of such Confidential Information to the extent necessary to perform its obligations under this Agreement. However, notwithstanding the foregoing, no pricing or payment terms provided by Vendor to Wegmans hereunder will be considered Confidential Information hereunder unless specifically agreed to by Wegmans in each circumstance. The obligations set forth in this Section will not apply to any information that (1) is or becomes available to the public through no breach of this Agreement; (2) was previously known by the Receiving Party without any obligation to hold it in confidence; (3) is received by the Receiving Party from a third party free to disclose such information without restriction; (4) is independently developed by the Receiving Party without the use of the Confidential Information of the Disclosing Party; (5) is approved for release by written authorization of the Disclosing Party, but only to the extent of such an authorization; or (6) is disclosed in response to a valid order of a court or other governmental body, but only to the extent of and for the purposes of such order and only if the Receiving Party first notifies the Disclosing Party of the order and permits the Disclosing Party to seek an appropriate protective order. The obligations of this Section will survive for 10 years following any termination of this Agreement.

## ARTICLE 4 – INSURANCE

4.1   Insurance. During the term of this Agreement, Vendor will maintain, without direct cost to Wegmans, insurance coverages of the types and in the amounts set forth in Attachment 1, provided by insurance companies authorized to do business in the State of New York and any other state where the Services are to be performed, and covering the Services to be performed under this Agreement. Vendor will also include Wegmans as an "alternate employer" under Vendor's Workers' Compensation and Employer Liability Policy. Before commencing work, Vendor shall furnish Wegmans with a certificate(s) of insurance, in standard form satisfactory to Wegmans, showing that it has complied with these requirements, as well as an Alternate Employer Endorsement, which certificate(s) shall provide that the policies shall not be changed or canceled until 30 days prior written notice has been given to Wegmans. Wegmans shall be included as an additional insured on the General Liability, Automobile and Excess/Umbrella insurance policies, and a copy of this endorsement for each of these policies shall be provided to Wegmans prior to commencement of the work and shall remain in full force and effect throughout the term of this agreement.   This insurance coverage will be primary to any and all other insurance applicable to this Agreement, but only when resulting from Aerotek's sole negligence, except with respect to workers' compensation matters, which are Aerotek'. The kinds and amount of insurance that are required hereunder are set forth in Attachment 1.

## ARTICLE 5 – INDEMNIFICATION

5.1   Indemnification. Vendor will indemnify, defend and hold Wegmans and Wegmans' officers, directors, affiliates, subsidiaries, agents, and employees (collectively, "Wegmans Indemnitees") harmless from any and all claims, actions, proceedings, losses, expenses, costs, liabilities and damages of every nature whatsoever, relating to the Services, including without limitation reasonable attorneys' fees and expenses and amounts paid in settlement (all of the foregoing being collectively referred to as "Losses"), which Wegmans Indemnitees may suffer or incur as a result of Vendor's negligent Services. This indemnification includes, but is not limited to, Losses arising from patent, copyright, trademark or other infringement; liability in connection with COBRA (26 U.S.C. § 4980B et seq.); for workers' compensation benefits or damages for any on-the-job injury incurred by Vendor Assigned Employees while performing services at or related to Wegmans; and for any claims asserted against any Wegmans Indemnitees by a third party for personal injury, death, or damage to property caused by the negligent acts of any Vendor Assigned Employees while performing services under this Agreement. In addition, this indemnification includes Losses suffered as a result of claims filed by any Vendor Assigned Employees under any federal, state or local law, for:

2

Vendor's discrimination or discriminatory interference in employment (including claims under the Americans with Disabilities Act and claims for leave under the Family and Medical Leave Act);

Vendor's breach of contract (express or implied), misrepresentation, fraud or defamation;

wages and/or employee benefits, including but not limited to pension and retirement benefits, unemployment benefits, workers' compensation benefits, FICA payments and withholding of federal, state, provincial and/or local income taxes owed or pertaining to any Vendor Assigned Employees; and

any other claim under laws or contract related to employment that occurs as a result of Vendor's negligence specific to the Services provided in this Agreement.

Vendor will also indemnify, defend and hold Wegmans harmless from any and all Losses arising out of the failure of Vendor to comply with any provision of this Agreement.

The above indemnification shall not apply to the extent of Wegmans' breach of this agreement, failure to comply with applicable law or its violation of law.

Wegmans will indemnify and hold Vendor and Vendor's officers, directors, affiliates, subsidiaries, agents, and employees harmless from any loss or damage to person or property caused by the negligent acts or omissions of Wegmans' personnel while Vendor is performing Services for Wegmans at a Wegmans' site under this Agreement.

Wegmans acknowledges that Vendor is not responsible for indirect, special or consequential damages (including, but not limited to, loss of profits, interest, earnings or use) whether arising in contract, tort or otherwise.

5.2     Procedure. A party's responsibility to indemnify the other party under the provisions of this Article is conditioned upon: (1) The indemnifying party receiving prompt written notice of any claim or action from the party claiming indemnification. (2) The indemnifying party having sole control over the defense of the claim or action to be indemnified. (3) The indemnifying party will have no liability to indemnify or hold the indemnified party harmless for any payment by the indemnified party in settlement of a claim or action unless the indemnifying party receives written notice of such proposed settlement and approves the settlement in writing before payment is made. Likewise the indemnified party must consent to any settlement of such a claim or action by the indemnifying party unless the settlement provides a complete release of liability for the indemnified party.

## ARTICLE 6 – WARRANTIES

6.1     Services. Vendor warrants that the Services will be performed in a workmanlike and professional manner in accordance with current best industry standards and applicable laws and regulations.   Vendor represents that it has personnel necessary to provide these Services in a safe, efficient and competent manner. If Vendor and/or the Vendor Assigned Employees must be licensed or certified under applicable laws, regulations or industry practices in order to provide the Services (Vendor)/services (Vendor Assigned Employees) requested, Vendor warrants that it and/or the Vendor Assigned Employees possess all required licenses or certifications and that they are in full force and effect. Vendor will obtain any temporary permits or licenses required in connection with the Services to be rendered at its own cost. Vendor also warrants that:  (i) it is solely responsible for payment of wages, other compensation, and all benefits due to all Vendor Assigned Employees and for compliance with all applicable federal, state and/or local payroll tax requirements in connection with the Services, including FICA payments, and that such compliance is not the responsibility of Wegmans; (ii) it will comply with all applicable federal, state and/or local laws and regulations concerning employment and employment discrimination when providing the Services (iii) it is solely responsible for verifying and documenting the identity and employment eligibility of all Vendor Assigned Employees supplied to Wegmans hereunder; (iv) it will be solely responsible for recruiting, interviewing, testing, screening for all Vendor Assigned Employees prior to their performing work under this Agreement; (v) it will furnish only qualified and competent Vendor Assigned Employees to perform the services based on requirements provided by Wegmans; (vi) it will be solely responsible for insuring that

3

Services provided under this Agreement comply with Wegmans' specifications. Wegmans will be responsible for providing Vendor with accurate job descriptions.

6.2 Pre-assignment tests. Vendor will be responsible for completing a drug screen on all Vendor Assigned Employees prior to assignment to any Wegmans location in accordance with applicable laws and regulations and as otherwise set forth in Attachment 2. Vendor shall bill Wegmans for such hair follicle drug screen at Vendor's pass through cost for each Vendor Assigned Employee that passes and is assigned to a Wegmans job site. Vendor shall not bill Wegmans and shall not assign any Vendor Assigned Employee that does not pass such hair follicle drug screen. Any Vendor Assigned Employees who fail the drug screen (as defined in Attachment 2) are not qualified to perform work under this Agreement and shall not be assigned by Vendor to any Wegmans location, and Vendor shall not bill Wegmans for failed drug screens. In addition, Vendor will be responsible for completing a tier 2 criminal background check on all Vendor Assigned Employees prior to assignment to any Wegmans location. Vendor shall bill Wegmans $20.00 for each such tier 2 criminal background check for each Vendor Assigned Employee that passes such background check and is assigned to Wegmans. The criminal background check shall be completed in accordance with applicable laws and regulations and as otherwise set forth in Attachment 2. Any Vendor Assigned Employees who fail the criminal background check (as defined in Attachment 2) are not qualified to perform work under this Agreement and shall not be assigned by Vendor to any Wegmans location and Vendor shall not bill Wegmans for failed background checks. Wegmans reserves the right to review the pass/fail results of the drug screen and/or criminal background check of any Vendor Assigned Employees.

## ARTICLE 7 – TERM; TERMINATION

7.1 Term. This Agreement is effective on the date on which signed by both parties and will run until terminated by either party: (a) upon 30 days' prior written notice to the other, with or without cause; or (b) immediately in the event the other party files, or has filed against it, any petition in bankruptcy or for relief from creditors, or if the other party makes any assignment for the benefit of creditors or ceases to meet its financial obligations when due. Any SOW hereunder will be effective on the date on which signed by both parties and will run until completed according to its terms, unless earlier terminated by either party under (a) or (b) above. Termination of a SOW will not act as a termination of this Agreement unless so specified. Upon termination of this Agreement or any SOW hereunder, Wegmans will pay all amounts due for fees payable to Vendor in respect of Services performed through the date of termination. Upon termination of this Agreement, each party will return or destroy, at the direction of the other party, all Confidential Information of the other party then in its possession.

## ARTICLE 8 – GENERAL

8.1 Notices. Any notice required or permitted hereunder shall be in writing and shall be deemed to have been duly given (a) upon hand delivery, (b) on the third day following delivery to the U.S. Postal Service as certified mail, return receipt requested and postage prepaid, (c) on the first day following delivery to a recognized overnight courier service, fee prepaid and return receipt or other confirmation of delivery requested, or (d) upon confirmation of receipt by the party to receive such notice, of a fax sent to the fax number of such party. Any such notice shall be delivered or sent to a party at its address or fax number set forth beneath its signature on this Agreement, or to such other address or fax number as may be designated by a party in a notice given to the other from time to time in accordance with the terms of this paragraph.

8.2 Governing Law and Dispute Resolution. This Agreement will be governed by and interpreted in accordance with the laws of the State of New York, excluding its conflicts of law principles. In the event that any legal proceedings are commenced with respect to any matter arising under this Agreement, the parties specifically consent and agree that the courts of the State of New York and/or the Federal Courts located in the State of New York will have exclusive jurisdiction over each of the parties and over the subject matter of any such proceedings, and that the venue of any such action will be in Monroe County, New York and/or the U.S. District Court for the Western District of New York. Additionally, the party that loses any such proceeding will pay all reasonable costs and expenses incurred by the other party in connection therewith, including all reasonable attorneys' and other professional fees and expenses.

4

8.3     Force Majeure. Neither party will be liable to the other for its failure to perform any of its obligations under any SOW during any period in which its performance is delayed by circumstances beyond its reasonable control or directly resulting from any failure of the other party to perform its obligations.

8.4     Waiver. No waiver of a breach of any term of this Agreement will be effective unless in writing and duly executed by the waiving party. No waiver will constitute a waiver of any subsequent breach of the same or any other term of this Agreement. No failure on the part of a party to exercise, and no delay in exercising, any of its rights hereunder will operate as a waiver thereof, nor will any single or partial exercise by a party of any right preclude any other or future exercise thereof or the exercise of any other right. No course of dealing between the parties will be deemed effective to modify, amend or discharge any part of this Agreement or the rights or obligations of any party hereunder.

8.5     Construction. This Agreement, together with its Attachments and SOWs executed hereunder, constitute the entire agreement with respect to the subject matter covered by the relevant SOW(s), supersede any prior agreements with respect to this subject matter, and may only be amended by a written document signed by both parties. Any interpretation of this Agreement or any SOW executed hereunder will not presume that its terms should be more strictly construed against one party by reason of any rule of construction or authorship. In the event of a conflict between the terms of this Agreement and those contained in a SOW executed hereunder, the terms of this Agreement will govern. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original. In making proof of this Agreement, it will not be necessary to produce more than one counterpart. The headings in this Agreement are for convenience only. They do not constitute a portion of this Agreement and shall not be used in any construction of it. If any term of this Agreement, or of any SOW, is held to be invalid or unenforceable for any reason, the remainder of the provisions of this Agreement or that SOW will continue in full force and effect. The provisions of this Agreement that by their nature would survive its termination will survive indefinitely. This Agreement shall not be assigned by either party without prior written consent of the other party, except that Wegmans may assign this Agreement, in whole or in part, to an affiliated entity. This Agreement will govern any Vendor Assigned Employees that may be performing services for Wegmans as of its effective date. Vendor warrants that any existing Vendor Assigned Employees meet the standards set forth herein including the relevant drug testing and background check standards set forth below or, if not, that Vendor will conduct these tests and background checks and determine that they are satisfactory within 30 days following the effective date of this Agreement.

8.6     Independent Contractor. It is the intent of the parties that the relationship between both Vendor and each of its Vendor Assigned Employees, respectively, vis-à-vis Wegmans hereunder is that of an independent contractor, and nothing set forth herein shall be deemed to render the parties as joint venturers, partners or employer and employee. Under no circumstances shall Wegmans be considered the employer of Vendor or of any Vendor Assigned Employees, nor shall Wegmans have any obligation to provide fringe benefits to or to withhold taxes normally withheld from an employee's pay on behalf of Vendor Assigned Employees. The parties intend and agree that for all purposes hereunder, that Vendor Assigned Employees are employees of Vendor, and not of Wegmans. Vendor shall have exclusive liability for the payment of local, state and federal payroll taxes, contributions for unemployment insurance, workers' compensation, old age pensions or other social security and related protection with respect to Vendor Assigned Employees and agrees to comply with all applicable rules and regulations. If under the applicable state Unemployment Compensation law, Vendor has the right to elect whether or not to come under and be bound by the terms of such law, Vendor will either self-insure or promptly register under said law. Vendor specifically agrees that all Vendor Assigned Employees will be instructed to abide by all personnel and workplace policies of Wegmans while performing services hereunder, and that failure to do so will be sufficient reason for Wegmans to request that the individual involved be promptly reassigned by Vendor from performing further services for Wegmans.

8.7     Publicity. Vendor may not reference its relationship with Wegmans for any purpose without first obtaining Wegmans' written consent in each circumstance.

8.8     Conversion and Transition of Vendor Assigned Employees. Wegmans acknowledges that Vendor incurs substantial expenses for recruiting, testing, training, and retaining its Vendor Assigned Employees, and Wegmans agrees to obtain the services of each Vendor Assigned Employee only through an order with Vendor. If Wegmans wishes to obtain the services of a Vendor Assigned Employee by hiring them (a "conversion"), or by assignment, arrangement, or contract

from another source (a "transition"), Wegmans will compensate Vendor at the conversion rates in listed Attachment 3, unless that Vendor Assigned Employee is no longer employed by Vendor and has not been so employed for at least six months.

8.9     Health and Safety.  Wegmans shall provide a safe, clean work environment that complies with all applicable local, state and federal laws.  Wegmans agrees to provide site specific training, certification, evaluation and orientation for all Vendor Assigned Employees in all applicable safety, hazardous communication and operational instructions in the same manner as Wegmans employees and as required by policy or by law, including but not limited to, all federal OSHA and equivalent state agency requirements, guidelines and standards.  Wegmans will provide and require all Vendor Assigned Employees to wear all appropriate safety equipment.  Wegmans will notify Vendor immediately in the event of an accident or medical treatment of any Vendor Assigned Employees, and will provide Vendor with a completed supervisor's report of injury.  In the event of an accident or other incident involving a Vendor Assigned Employees, Vendor shall have the right to conduct an onsite investigation.  Wegmans shall indemnify Vendor and hold it harmless against and from any claims made or brought as a result of Wegmans breach of its obligations contained in this paragraph.  The Vendor Assigned Employees shall perform only the duties and functions of the specific jobs set forth opposite the Vendor Assigned Employees' name on the attached SOW. Vendor Assigned Employees shall not be assigned or permitted to perform any other duties or functions for Wegmans without Vendor's written permission. Vendor Assigned Employees are not authorized to operate a motor vehicle without Vendor's express written permission.

By signing below, the parties agree to the terms of this Agreement and further certify that their respective signatories are duly authorized to execute this Agreement. This Agreement is effective as of the date on which it has been signed by both parties, as indicated below.

WEGMANS FOOD MARKETS, INC.:

By: _Stephen P Glenning_ / Signature

Print Name: Stephen P. Glenning

Title: Director of Indirect Purchasing

Date: 2/02, 2012

Address for Notices:
1500 Brooks Avenue
PO Box 30844
Rochester, New York 14603-0844
Attention: Stephen Glenning
Fax number: (585) 464-4636
Attn: Stephen Glenning

VENDOR: Aerotek, Inc

Name: Brad Centineo

By: _BC_ / Signature

Print Name: Brad Centineo

Title: Regional Controller

Date: 2/2, 2012

Address for Notices:
7301 Parkway Dr
Hanover MD 21046

Attention: NE Controller
Fax number: 410-694-5049
Attn: NE Controller

7

ATTACHMENT 1

Insurance Requirements

<u>The kinds and amount of insurance Vendor is required to provide are:</u>

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | | LIMITS | |
|---|---|---|---|---|---|
| X | X | GENERAL LIABILITY | | EACH OCCURRENCE | $1,000,000 |
| | | X | COMMERCIAL GENERAL LIABILITY | DAMAGE TO RENTED PREMISES (Each Occurrence) | $50,000 |
| | | X | PER OCCURRENCE | MED EXP (Any one person) | $5,000 |
| | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | PRODUCTS-COMP/OP AGG | $2,000,000 |
| X | | AUTOMOBILE LIABILITY | | COMBINED SINGLE LIMIT | $1,000,000 |
| | | X | ANY AUTO | | |
| | | X | ALL OWNED AUTOS | | |
| | | X | HIRED AUTOS | | |
| | | X | NON-OWNED AUTOS | | |
| X | | EXCESS/UMBRELLA LIABILITY | | EACH OCCURRENCE | $4,000,000 |
| | | X | PER OCCURRENCE | AGGREGATE | $4,000,000 |
| | | X | RETENTION | | |
| X | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | X  WC STATUTORY LIMITS | |
| | | | | E.L. EACH ACCIDENT | $100,000 |
| | | | | E.L. EACH DISEASE-EA EMPLOYEE | $100,000 |
| | | | | E.L. DISEASE-POLICY LIMIT | $500,000 |

ATTACHMENT 2 – NEW YORK
DRUG SCREENING; CRIMINAL BACKGROUND CHECK

**Drug Screening:**

Prior to placing each Vendor Assigned Employee to any Wegmans location Vendor shall perform a hair follicle drug screen on the Vendor Assigned Employee in a manner that is at the sole discretion of the Vendor; provided however, that such test shall include screening for the cut-off levels set for the five (5) classes of drugs identified by the Substance Abuse and Mental Health Administration, formerly National Institute of Drug Abuse (NIDA), generally, Cannabinoids, Cocaine Metabolites, Opiates, Phencyclidine, Amphetamines. The drug screen shall be performed by Psychemedics Corp or other similar provider of such drug screening services. Any Vendor Assigned Employee that exceeds the cut-off levels shall be deemed to have failed the drug screen and shall not be assigned by Vendor to any Wegmans location. Vendor shall notify Wegmans that the Vendor Assigned Employee is not qualified to perform work under this Agreement. Notwithstanding this provision, Vendor shall at all times complete the drug screen in accordance with applicable federal, state and local law.

**Criminal Background Check:**

Vendor shall perform a criminal background check via a third party provider of such information (such as Verified Person, General Information Services, Lexis Nexis or similar provider) prior to placing each and every Vendor Assigned Employee at any Wegmans location. Such criminal background check shall be completed in accordance with the Fair Credit Reporting Act and all applicable federal, state and local laws and regulations. The criminal background check shall consist of at least a social security number trace and a state and county background check via the state court system or state/local police department.

Vendor shall consider all such background check information results in accordance with applicable federal, state and local laws. Vendor shall consider whether (1) a *direct relationship* exists between one or more of the criminal offenses and the specific assignment sought; or (2) the grant of an assignment to the Vendor Assigned Employee would involve *an unreasonable risk* to the property, safety, or welfare of specific individuals or the general public.

To determine whether a *direct relationship* or *unreasonable risk* exists, the Vendor must consider the following eight (8) factors:

1. The public policy of the State to encourage the employment of persons previously convicted of one or more criminal offenses.
2. The specific duties/responsibilities necessarily related to the assignment (as set forth in the job description provided by Wegmans).
3. The bearing, if any, the criminal offense(s) for which the Vendor Assigned Employee was convicted has on fitness/ability to perform one or more duties/responsibilities of the assignment.
4. The time elapsed since the occurrence of criminal offense(s) (and other relevant dates, if any, including date of release, dates of probation period, etc.).
5. The Vendor Assigned Employee's age at the time of occurrence of criminal offense(s).
6. The seriousness of the offense(s).
7. Information (if any) produced by the Vendor Assigned Employee (or on his/her behalf) in regard to rehabilitation and good conduct.
8. The legitimate interest of Vendor and Wegmans in protecting property, safety, or welfare of specific individuals or the general public.

9

If, after considering these eight (8) factors, Vendor determines that a direct relationship or unreasonable risk exists, the Vendor Assigned Employee shall be deemed to have failed the criminal background check and shall not be assigned by Vendor to any Wegmans location. Vendor shall notify Wegmans that such Vendor Assigned Employee is not qualified to perform work under this Agreement.

Wegmans reserves the right to review the criminal background check or drug screen of any Vendor Assigned Employee at any time.

ATTACHMENT 2 – PENNSYLVANIA

DRUG SCREENING; CRIMINAL BACKGROUND CHECK

**Drug Screening:**

Prior to placing each Vendor Assigned Employee to any Wegmans location Vendor shall perform a hair follicle drug screen on the Vendor Assigned Employee in a manner that is at the sole discretion of the Vendor; provided however, that such test shall include screening for the cut-off levels set for the five (5) classes of drugs identified by the Substance Abuse and Mental Health Administration, formerly National Institute of Drug Abuse (NIDA), generally, Cannabinoids, Cocaine Metabolites, Opiates, Phencyclidine, Amphetamines. The drug screen shall be performed by Psychemedics Corp or other similar provider of such drug screening services. Any Vendor Assigned Employee that exceeds the cut-off levels shall be deemed to have failed the drug screen and shall not be assigned by Vendor to any Wegmans location. Vendor shall notify Wegmans that the Vendor Assigned Employee is not qualified to perform work under this Agreement. Notwithstanding this provision, Vendor shall at all times complete the drug screen in accordance with applicable federal, state and local law.

**Criminal Background Check:**

Vendor shall perform a criminal background check via a third party provider of such information (such as Verified Person, General Information Services, Lexis Nexis or similar provider) prior to placing each and every Vendor Assigned Employee at any Wegmans location. Such criminal background check shall be completed in accordance with the Fair Credit Reporting Act and all applicable federal, state and local laws and regulations. The criminal background check shall consist of at least a social security number trace and a state and county background check via the state court system or state/local police department.

Vendor shall consider all such background check information results in accordance with applicable federal, state and local laws. Vendor shall consider misdemeanor and felony conviction and currently pending arrest records on a case-by-case basis and to the extent such records relate to the Vendor Assigned Employee's suitability for the specific assignment (as set forth in the work description provided by Wegmans), taking into account:

1) The specific duties and responsibilities of the specific assignment;
2) The relationship of the misdemeanor and/or felony conviction(s) or currently pending arrest(s) to such duties and responsibilities;
3) The amount of time that has elapsed since the conviction(s); and
4) Business necessity.

Vendor shall **not** consider summary offense conviction records when making assignment decisions unless otherwise legally entitled to do so. For example, Vendor must consider summary offense conviction records to the extent permitted and/or required by applicable law when the assignment includes or is likely to include commercial driver work.

If Vendor determines that any Vendor Assigned Employee's conviction record impacts his/her suitability for the assignment (including whether the Vendor Assigned Employee is disqualified from performing assignment work as a result of the Vendor Assigned Employee's conviction record), Vendor shall notify Wegmans that such Vendor Assigned Employee is not qualified to perform work under this Agreement and such Vendor Assigned Employee shall not be placed by Vendor at any Wegmans location.

Wegmans reserves the right to review the criminal background check or drug screen of any Assigned Employee at any time.

11

## ATTACHMENT 2 – MARYLAND

### DRUG SCREENING; CRIMINAL BACKGROUND CHECK

**Drug Screening:**

Prior to placing each Vendor Assigned Employee to any Wegmans location Vendor shall perform (or cause to be performed) a drug screen as follows and in accordance with applicable law: (1) a hair follicle drug screen of any new employee of Vendor who may be assigned to a Wegmans location and (2) a urine drug screen of any current employee of Vendor who may be assigned to a Wegmans location. Vendor shall perform (or cause to be performed) two (2) additional random urine drug screens within three (3) months of the date of the initial urine drug screen upon those individuals who received an initial urine drug screen. In addition to any federal, state, or local requirements, any drug screen must include screening for the cut-off levels set for the five (5) classes of drugs identified by the Substance Abuse and Mental Health Administration, formerly National Institute of Drug Abuse (NIDA), generally, Cannabinoids, Cocaine Metabolites, Opiates, Phencyclidine, Amphetamines. Drug screens shall be performed by a laboratory holding a Maryland permit to provide job-related drug screening services. Any Vendor Assigned Employee that exceeds the cut-off levels shall be deemed to have failed the drug screen and shall not be assigned by Vendor to any Wegmans location. Any Vendor Assigned Employee who fails any subsequent drug screen required by this paragraph shall no longer be assigned by Vendor at any time to any Wegmans location. When a Vendor Assigned Employee fails a drug screen Vendor shall notify Wegmans that the Vendor Assigned Employee is not qualified to perform work under this Agreement. Vendor shall at all times complete the drug screen in accordance with applicable federal, state and local law.

**Criminal Background Check:**

Vendor shall perform a criminal background check via a third party provider of such information (such as Verified Person, General Information Services, Lexis Nexis or similar provider) prior to placing each and every Vendor Assigned Employee at any Wegmans location. Such criminal background check shall be completed in accordance with the Fair Credit Reporting Act and all applicable federal, state and local laws and regulations. The criminal background check shall consist of at least a social security number trace and a state and county background check via the state court system or state/local police department.

Vendor shall consider all such background check information results in accordance with applicable federal, state and local laws. Vendor shall consider criminal conviction and currently pending arrest records on a case-by-case basis and to the extent such records relate to the Vendor Assigned Employee's suitability for the specific assignment (as set forth in the work description provided by Wegmans), taking into account:

1) The specific duties and responsibilities of the specific assignment;
2) The relationship of the criminal conviction(s) or currently pending arrest(s) to such duties and responsibilities;
3) The amount of time that has elapsed since the conviction(s); and
4) Business necessity.

Vendor shall **not** consider conviction records of *nolle prosequi* entries when making assignment decisions unless otherwise legally entitled to do so.

If Vendor determines that any Vendor Assigned Employee's conviction record impacts his/her suitability for the assignment (including whether the Vendor Assigned Employee is disqualified from performing assignment work as a result of the Vendor Assigned Employee's conviction record), Vendor shall notify Wegmans that such Vendor Assigned Employee is not qualified to perform work under this Agreement and such Vendor Assigned Employee shall not be placed by Vendor at any Wegmans location.

12

Wegmans reserves the right to review the criminal background check or drug screen of any Assigned Employee at any time.

## ATTACHMENT 2 – MASSACHUSETTS

### DRUG SCREENING; CRIMINAL BACKGROUND CHECK

**Drug Screening:**

Prior to placing each Vendor Assigned Employee to any Wegmans location Vendor shall perform a hair follicle drug screen on the Vendor Assigned Employee in a manner that is at the sole discretion of the Vendor; provided however, that such test shall include screening for the cut-off levels set for the five (5) classes of drugs identified by the Substance Abuse and Mental Health Administration, formerly National Institute of Drug Abuse (NIDA), generally, Cannabinoids, Cocaine Metabolites, Opiates, Phencyclidine, Amphetamines. The drug screen shall be performed by Psychemedics Corp or other similar provider of such drug screening services. Any Vendor Assigned Employee that exceeds the cut-off levels shall be deemed to have failed the drug screen and shall not be assigned by Vendor to any Wegmans location. Vendor shall notify Wegmans that the Vendor Assigned Employee is not qualified to perform work under this Agreement. Notwithstanding this provision, Vendor shall at all times complete the drug screen in accordance with applicable federal, state and local law.

**Criminal Background Check:**

Vendor shall perform a criminal background check via a third party provider of such information (such as Verified Person, General Information Services, Lexis Nexis or similar provider) prior to placing each and every Vendor Assigned Employee at any Wegmans location. Such criminal background check shall be completed in accordance with the Fair Credit Reporting Act and all applicable federal, state and local laws and regulations. The criminal background check shall consist of at least a social security number trace and a state and county background check via the state court system or state/local police department.

Vendor shall consider all such background check information results in accordance with applicable federal, state and local laws. Vendor shall consider criminal conviction and currently pending arrest records on a case-by-case basis and to the extent such records relate to the Vendor Assigned Employee's suitability for the specific assignment (as set forth in the work description provided by Wegmans), taking into account:

1) The specific duties and responsibilities of the specific assignment;
2) The relationship of the criminal conviction(s) or currently pending arrest(s) to such duties and responsibilities;
3) The amount of time that has elapsed since the conviction(s); and
4) Business necessity.

Vendor shall **not** consider conviction records of *nolle prosequi* entries when making assignment decisions unless otherwise legally entitled to do so.

If Vendor determines that any Vendor Assigned Employee's conviction record impacts his/her suitability for the assignment (including whether the Vendor Assigned Employee is disqualified from performing assignment work as a result of the Vendor Assigned Employee's conviction record), Vendor shall notify Wegmans that such Vendor Assigned Employee is not qualified to perform work under this Agreement and such Vendor Assigned Employee shall not be placed by Vendor at any Wegmans location.

Wegmans reserves the right to review the criminal background check or drug screen of any Assigned Employee at any time.

14

ATTACHMENT 2 – NEW JERSEY

DRUG SCREENING; CRIMINAL BACKGROUND CHECK

**Drug Screening:**

Prior to placing each Vendor Assigned Employee to any Wegmans location Vendor shall perform a hair follicle drug screen on the Vendor Assigned Employee in a manner that is at the sole discretion of the Vendor; provided however, that such test shall include screening for the cut-off levels set for the five (5) classes of drugs identified by the Substance Abuse and Mental Health Administration, formerly National Institute of Drug Abuse (NIDA), generally, Cannabinoids, Cocaine Metabolites, Opiates, Phencyclidine, Amphetamines. The drug screen shall be performed by Psychemedics Corp or other similar provider of such drug screening services. Any Vendor Assigned Employee that exceeds the cut-off levels shall be deemed to have failed the drug screen and shall not be assigned by Vendor to any Wegmans location. Vendor shall notify Wegmans that the Vendor Assigned Employee is not qualified to perform work under this Agreement. Notwithstanding this provision, Vendor shall at all times complete the drug screen in accordance with applicable federal, state and local law.

**Criminal Background Check:**

Vendor shall perform a criminal background check via a third party provider of such information (such as Verified Person, General Information Services, Lexis Nexis or similar provider) prior to placing each and every Vendor Assigned Employee at any Wegmans location. Such criminal background check shall be completed in accordance with the Fair Credit Reporting Act and all applicable federal, state and local laws and regulations. The criminal background check shall consist of at least a social security number trace and a state and county background check via the state court system or state/local police department.

Vendor shall consider all such background check information results in accordance with applicable federal, state and local laws. Vendor shall consider criminal conviction and currently pending arrest records on a case-by-case basis and to the extent such records relate to the Vendor Assigned Employee's suitability for the specific assignment (as set forth in the work description provided by Wegmans), taking into account:

1) The specific duties and responsibilities of the specific assignment;
2) The relationship of the criminal conviction(s) or currently pending arrest(s) to such duties and responsibilities;
3) The amount of time that has elapsed since the conviction(s); and
4) Business necessity.

Vendor shall **not** consider disorderly persons and petty disorderly persons offense conviction records when making assignment decisions unless otherwise legally entitled to do so.

If Vendor determines that any Vendor Assigned Employee's conviction record impacts his/her suitability for the assignment (including whether the Vendor Assigned Employee is disqualified from performing assignment work as a result of the Vendor Assigned Employee's conviction record), Vendor shall notify Wegmans that such Vendor Assigned Employee is not qualified to perform work under this Agreement and such Vendor Assigned Employee shall not be placed by Vendor at any Wegmans location.

Wegmans reserves the right to review the criminal background check or drug screen of any Assigned Employee at any time.

15

## ATTACHMENT 2 – VIRGINIA

## DRUG SCREENING; CRIMINAL BACKGROUND CHECK

**Drug Screening:**

Prior to placing each Vendor Assigned Employee to any Wegmans location Vendor shall perform a hair follicle drug screen on the Vendor Assigned Employee in a manner that is at the sole discretion of the Vendor; provided however, that such test shall include screening for the cut-off levels set for the five (5) classes of drugs identified by the Substance Abuse and Mental Health Administration, formerly National Institute of Drug Abuse (NIDA), generally, Cannabinoids, Cocaine Metabolites, Opiates, Phencyclidine, Amphetamines. The drug screen shall be performed by Psychemedics Corp or other similar provider of such drug screening services. Any Vendor Assigned Employee that exceeds the cut-off levels shall be deemed to have failed the drug screen and shall not be assigned by Vendor to any Wegmans location. Vendor shall notify Wegmans that the Vendor Assigned Employee is not qualified to perform work under this Agreement. Notwithstanding this provision, Vendor shall at all times complete the drug screen in accordance with applicable federal, state and local law.

**Criminal Background Check:**

Vendor shall perform a criminal background check via a third party provider of such information (such as Verified Person, General Information Services, Lexis Nexis or similar provider) prior to placing each and every Vendor Assigned Employee at any Wegmans location. Such criminal background check shall be completed in accordance with the Fair Credit Reporting Act and all applicable federal, state and local laws and regulations. The criminal background check shall consist of at least a social security number trace and a state and county background check via the state court system or state/local police department.

Vendor shall consider all such background check information results in accordance with applicable federal, state and local laws. Vendor shall consider criminal conviction and currently pending arrest records on a case-by-case basis and to the extent such records relate to the Vendor Assigned Employee's suitability for the specific assignment (as set forth in the work description provided by Wegmans), taking into account:

1) The specific duties and responsibilities of the specific assignment;
2) The relationship of the criminal conviction(s) or currently pending arrest(s) to such duties and responsibilities;
3) The amount of time that has elapsed since the conviction(s); and
4) Business necessity.

Vendor shall **not** consider conviction records of *nolle prosequi* entries when making assignment decisions unless otherwise legally entitled to do so.

If Vendor determines that any Vendor Assigned Employee's conviction record impacts his/her suitability for the assignment (including whether the Vendor Assigned Employee is disqualified from performing assignment work as a result of the Vendor Assigned Employee's conviction record), Vendor shall notify Wegmans that such Vendor Assigned Employee is not qualified to perform work under this Agreement and such Vendor Assigned Employee shall not be placed by Vendor at any Wegmans location.

Wegmans reserves the right to review the criminal background check or drug screen of any Assigned Employee at any time.

16

ATTACHMENT 3

TRANSITION COMPENSATION

| If Wegmans hires a Vendor Assigned Employee within: | Wegmans will compensate Vendor at the rate of: |
|---|---|
| 0-4 weeks following start date: | 20% of Assigned Employee's Annual Salary |
| 5-8 weeks following start date: | 15% of Assigned Employee's Annual Salary |
| 9-12 weeks following start date: | 10% of Assigned Employee's Annual Salary |
| 13-16 weeks following start date: | 5% of Assigned Employee's Annual Salary |
| 16 weeks+ | -0- |

PERFORMANCE GUARANTEE

If Wegmans is not satisfied with the job performance of any Vendor Assigned Employee, and notifies Vendor in writing within the first 8 working hours, Wegmans will not be required to pay for those services. Once the Vendor Assigned Employee begins his/her next hour of work, Wegmans agrees to pay for all hours charged for that Vendor Assigned Employee from the first hour of work.

**Direct Placement Option:**

AEROTEK shall conduct each search for Client for a Direct Placement Fee ("Fee") of 20% of the Placement's annualized first year salary, in addition to all applicable sales or other tax. The Fee shall cover all fees and expenses incurred by AEROTEK in a conduct of the search, including, but not limited to, professional fees, research expenses, and communication costs. When AEROTEK has referred a candidate whom Client wants to hire as a Placement, AEROTEK and Client will execute and sign a Direct Placement Exhibit A, which will state the Placement's name, salary, Fee, and start date.

**Technical Guarantee**

With respect to employees recruited to fill technical positions, should Employee resign or be dismissed (for reasons other than reduction in workforce, reorganization, or layoff) within the first sixty (60) calendar days, AEROTEK agrees to refund the Fee according to the below schedule. AEROTEK does reserve the right to review termination documentation prior to refunding the Client.

| Calendar Days | Refund Percentage |
|---|---|
| 0-30 Days | 100% Refund |
| 31-60 Days | 50% Refund |
| 60 Days + | No Refund |

**Non-Technical Guarantee**

With respect to employees recruited to fill non-technical positions, should the hired Employee resign or be terminated (except for reduction in workforce or reorganization) within the first eighty (80) working hours of employment, any fees paid will be refunded in full.

17