| CLERK'S NOTICE | DOCKET NUMBER<br>1581CV05360 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Joseph F Holguin et al vs. Wegmans Food markets, Inc. et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|
| TO:<br>Stephen T Armato, Esq.<br>Cetrulo LLP<br>Two Seaport Lane<br>Boston, MA 02210 | COURT NAME & ADDRESS<br>Middlesex Superior - Lowell<br>360 Gorham Street<br>Lowell, MA 01852 |

You are hereby notified that on the following entry was made on the above referenced docket:

| DATE ISSUED<br>10/23/2018 | ASSOCIATE JUSTICE/ ASSISTANT CLERK | SESSION PHONE#<br>(978)453-0201 |
|---|---|---|

Date/Time Printed: 10-23-2018 11:23:39                                                                 SCV016_X1\ 08/2014

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                    SUPERIOR COURT
                                                                  CIVIL ACTION
                                                                  No. 1581CV05360

JOSEPH F. HOLGUIN & another[1]

vs.

WEGMANS FOOD MARKETS, INC. & others[2]

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS WEGMANS FOOD MARKETS, INC.'S, THIRD AVENUE, LLC'S, AEROTEK, INC.'S, AND TOM STORY'S MOTIONS FOR SUMMARY JUDGMENT

Joseph Holguin sustained injuries on July 8, 2014 when he fell off scaffolding while working on the construction of a Wegmans grocery store in Burlington, Massachusetts. Plaintiffs Joseph and Laura Holguin[3] have brought negligence and loss of consortium claims against defendant Wegmans Food Markets, Inc. (Wegmans), the project's general contractor and lessee of the property, Third Avenue, LLC (Third Avenue), the owner and lessor of the property, and James Sullivan d/b/a SafetyChexx (collectively, Sullivan), whom Wegmans retained to conduct safety inspections. The plaintiffs have also asserted negligence and loss of consortium claims against defendants Aerotek, Inc. (Aerotek), a staffing agency, and Tom Story, an Aerotek employee assigned to work for Wegmans on the construction project. The matter is now before the court on three separate motions: defendants Tom Story and Aerotek's motion for summary judgment; defendant Wegmans' motion for summary judgment; and defendant Third Avenue's motion for summary judgment. For the reasons set forth below, Aerotek and Tom Story's

---

[1] Laura Holguin.
[2] Third Avenue, LLC, Aerotek, Inc., James B. Sullivan d/b/a SafetyChexx, and Tom Story.
[3] As the plaintiffs share a surname, to avoid confusion the court will refer to them by their first names.

motion is **ALLOWED** for Aerotek and **DENIED** for Tom Story, Wegmans' motion is **DENIED**, and Third Avenue's motion is **ALLOWED**.

## SUMMARY JUDGMENT RECORD

The summary judgment record includes the following undisputed material facts. These facts are drawn from the parties' jointly filed Rule 9A(b)(5) statements, and any factual conflicts have been resolved in favor of the non-moving plaintiffs.

Third Avenue owns the subject property. In 2011, Third Avenue leased the property to Wegmans. Under the lease's terms, Wegmans was to construct a supermarket on the property. The lease also provided Wegmans with the "exclusive control, possession, occupancy and use of the [property]." See Paper #27.3 at #9. Wegmans served as general contractor for the project, and subcontracted with MP Masonry (MP), a construction subcontractor that provided masonry and stone work, to perform masonry services during the construction phase. See Ex. 14. MP employed Joseph as a laborer. Ex. 28.

The contract between Wegmans and MP contains a number of provisions regarding safety. The parties dispute the meaning and effect of those provisions, with Wegmans arguing that the contract charges MP with the sole responsibility for its employees' safety, and the plaintiffs countering that Wegmans and MP shared safety responsibilities. The pertinent provisions of the Wegmans/MP subcontract include the following:

Article 4.4 Supervision and Construction Procedures

4.4.1. Contractor [MP] shall supervise and direct the Work using its best skill and attention. It shall be solely responsible for all construction means, methods, techniques, sequences and procedures for Work done by its forces and those under its direction or control, for coordinating all portions of the Work under the Contract, and for safety as well as conformity and timeliness of all portions of the Work under the Contract.

2

4.4.4. Contractor [MP], its employees, Subcontractors, suppliers, representatives, invitees and agents will be subject to such rules and regulations for the conduct of Work as Owner [Wegmans] may establish. Contractor will be responsible for the enforcement among its employees of Owner's instructions.

Article 4.14 Use of Site

4.14.5. Except as otherwise provided, Contractor [MP] shall furnish, erect and maintain all staging and scaffolding required for the Work. Staging and scaffolding shall be erected and removed by experienced staging builders and shall have the accident prevention devices required by State, Local and Federal laws.

Article 10.1 Protection of Persons and Property

10.1.1. Contractor [MP] shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. Contractor shall initiate and be responsible for developing and submitting to Owner [Wegmans] prior to commencement of Work a written safety program for its employees and those of his Subcontractors.

Article 10.2 Safety of Persons and Property

10.2.1. Contractor [MP] shall take all necessary precautions for the safety of, and shall provide all necessary protection to prevent damage, injury or loss to . . . all employees on the Work and all other persons who may be affected thereby.

10.2.5. If Contractor [MP] fails to take immediate corrective action following notice from the Owner [Wegmans] of any unsafe condition or deficiency in the Work, or any failure to meet the obligations of Paragraphs 10.1.1 through 10.2.4, Owner shall be entitled to take all reasonable corrective action without prior notice and at Contractor's expense.

Ex. 14.

Wegmans employed James Sullivan as a safety consultant. Ex. 12, Sullivan Dep. at 18. His duties entailed making unannounced safety inspections at the construction site and issuing safety reports afterwards. *Id.* at 18-19. Sullivan conducted site safety checks approximately once every three weeks in April, May, and June of 2014. On several occasions, he observed safety hazards related to MP employees' installation and use of scaffolding.[4] *Id.* at 45, 53, 61.

---

[4] On April 7, 2014, Sullivan's safety report noted the following issues regarding MP's scaffolding: "Planks mostly damaged, Not a full platform, Planks not properly overlapped, No access ladder to WWS platform, Mud sill pads

3

On each occasion, after observing the hazards, Sullivan spoke to MP foreman Mark Muse about correcting the safety issues he observed. *Id.* at 57. Tom Story would often accompany Sullivan on his inspections, and Sullivan would direct him to follow up with Muse. *Id.* at 58-59. On at least one occasion, Sullivan gave Muse materials regarding the Occupational Safety and Health Administration's (OSHA) safety standards and "required" Muse to discuss scaffolding safety at one of his weekly "toolbox talk[s]" with his employees. *Id.* at 65.

Neil Lawther was Wegmans' Project Superintendent. Ex. 5, Lawther Dep. at 25. When asked if he "had any responsibility to provide a safe work place for employees of subcontractors," Lawther answered, "No." *Id.* at 14-15. However, when later asked who was in charge of "overall safety of the Wegmans construction project," Lawther testified that "[t]he contractors are responsible for their own individual safety and me as a Wegmans representative made sure that they were upholding a safety [sic] environment for their employees." *Id.* at 30.

Wegmans also contracted with Aerotek to provide it with an "Assistant Project Manager"[5] for the project. Ex. 2, Ex. 6. Aerotek provided Tom Story, an Aerotek employee. The "Temporary Labor Procurement Agreement" between Wegmans and Aerotek states that "Vendor [Aerotek] will select and assign Vendor employees . . . to perform services for Wegmans as needed by Wegmans from time to time, under Wegmans direction and supervision in an environment controlled by Wegmans." Ex. 2 at 1. The requisition for the assistant project manager job described the job duties as:

---

not centered or secured to foot pad." Ex. 25. On April 30, 2014, Sullivan's report noted "Scaffolding[,] Guard rail not in place on scaffold. No one on platform at time." *Id.* On May 21, 2014, Sullivan's report noted "Scaffolding[,] X-Bracing not in place in some sections, Planks need to be properly overlapped or cleat." *Id.* Finally, on June 18, 2014, Sullivan's report noted that "Guard rail not in place, Planks need to be overlapped or cleat, Mud still not stable, not properly placed." *Id.*

[5] The record describes Story's initial job title as either "Assistant Project Manager" or "Field Tech." The titles appear to be interchangeable as both refer to the same duties.

4

> Assistant project manager, Clerk, construction project admin: Filing, word processing (meeting minutes, etc.[)], Update drawings, distribute revision bulletins via e-mail and fax. Data entry in PMWEB construction software – work for Project Manager assist superintendent and Field Tech. [W]ould like this person to have worked in a construction job trailer and was familiar with working on a construction site.

Story reported to, and received direction from, Wegmans Project Superintendent Neil Lawther. SMF # 15. Aerotek did not monitor or oversee Story's work, and the agreement is altogether silent on the subject of safety. Aerotek had no management personnel on site. SMF # 16.

Shortly after he started working for Wegmans, Wegmans promoted Story to "foreman." Ex. 5, Lawther Dep. at 25. An internal Wegmans document, describing the company's construction safety program, states that the position of foreman involves a number of safety-related responsibilities. Ex. 40. However, it appears that no one at Wegmans ever shared or discussed this document with Story. Ex. 5 at 26, Ex. 1 at 18, SMF #21, 23-25. It also appears that Wegmans never required Story to perform these duties, and Story never did. Ex. 1 at 6-27, 66, 70, 75. While Story did, at times, accompany Sullivan during his safety inspections, Story's role was limited to facilitating communication between Sullivan and the various subcontractors. *Id.* at 44-45, Ex. 12 at 38. While Story's main role as foreman was to ensure the subcontractors' work was progressing on schedule, he would also correct safety issues he noticed while walking the construction site. Ex. 1 at 6-27, 70, 75. For example, if he saw someone working without safety glasses, he would instruct the person to put them on. *Id.* at 23, 25, 70, 75.

On the day of Joseph's accident, at approximately 3:45 PM, Muse directed Joseph to assist another MP employee who was working on MP's scaffolding. Ex. 19. As Joseph walked across the scaffolding with a bucket of water, he fell to the ground. Ex. 19. A subsequent investigation revealed that one of the "outriggers," pieces of equipment attached to the

5

scaffolding frame that supported the walking surface, had been improperly installed, and had fallen off. Ex. 15 at 22-34.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56; *Community Nat'l Bank v. Dawes*, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue. *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17 (1989). If the moving party does not bear the burden of proof at trial, it must either submit affirmative evidence negating an essential element of the non-moving party's claim or demonstrate that the non-moving party's evidence is insufficient to establish its claim. *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 711 (1991). Mere assertions of the existence of disputed facts without evidentiary support cannot defeat a summary judgment motion. *LaLonde v. Eissner*, 405 Mass. 207, 209 (1989). The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. *Attorney Gen. v. Bailey*, 386 Mass. 367, 370-371 (1982).

### II. Plaintiffs' Claims Against Wegmans and Tom Story

To establish a negligence claim, "a plaintiff must prove that the defendant owed [him] a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage." *Jupin v. Kask*, 447 Mass. 141, 146 (2006). Although the latter three elements of proof are generally regarded as "the special province of the jury," *id.*, the "existence or non-existence of a duty is a question of

6

law" and thus suitable for resolution at the summary judgment stage. *Id.* See *Lyon* v. *Morphew*, 424 Mass. 828, 833 (1997) ("The existence of a duty of care is a question of law"). "If no such duty exists, a claim of negligence cannot be brought." *Remy* v. *MacDonald*, 440 Mass. 675, 677 (2004). See *Afarian* v. *Mass. Elec. Co.*, 449 Mass. 257, 261 (2007).

Joseph argues that Wegmans, as general contractor of the construction site, had a duty to ensure that the scaffolding he fell from was set up in a safe manner. Wegmans maintains that it owed no duty of care to Joseph. Generally, "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965). One, such as Wegmans, who employs an independent contractor "may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in [§ 414] unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." *Id.* comment a. "The rule stated in [§ 414] is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control

7

which he has retained in himself." *Id.* comment b. See *Corsetti* v. *Stone Co.*, 396 Mass. 1, 10-14 (1985).

"[W]hether an employer has sufficient control over part of the work of an independent contractor to render [it] liable under § 414 is a question of fact for the jury." *Corsetti*, 396 Mass. at 11, and cases cited. Whether Wegmans retained sufficient control over the safety aspects of the construction project is a dispute of material fact. Based on the evidence in the record, under the terms of MP's subcontract with Wegmans, one of MP's responsibilities was to furnish, erect, and maintain all staging and scaffolding required for its work, and that MP was solely responsible for the safety of its employees. On the other hand, there is evidence that Wegmans retained some authority for overall job site safety: Wegmans contracted with Sullivan to perform random safety inspections; Sullivan had the authority to direct subcontractors, or direct Lawther or Story to direct subcontractors, to remedy violations of safety rules and regulations; Sullivan in fact exercised his authority in checking to see whether scaffolding was properly set; Sullivan had discussed safety requirements and procedures with Lawther, Story, and Mark Muse; and Sullivan was aware of prior safety issues with MP's set up and use of scaffolding.

Wegmans' reliance on *Foley* v. *Rust Int'l*, 901 F.2d 183 (1st Cir. 1990), is misplaced. In *Foley*, the subcontractor by contract had absolved the general contractor of any safety obligations by explicitly taking responsibility for all aspects of safety on the jobsite. *Id.* at 184-185. The fact that Wegmans--through Sullivan, Lawther, or Story--had some responsibility for jobsite safety distinguishes this case from *Foley*. Wegmans had an opportunity to stop or prevent the use of unsafe scaffolding and its failure to do so makes the issue of Wegmans' control and negligence questions for a jury.

Wegmans argues that even assuming, *arguendo*, that it owed a duty to Joseph, there is no evidence that it breached that duty. There is evidence that MP's employees did not set up or use the scaffolding according to safety standards. Combined with the evidence that Wegmans, through Sullivan, knew of past safety issues regarding MP's use of scaffolding, this permits an inference that Wegmans either knew or should have known that scaffolding was not being used safely and that Wegmans, as a result, was negligent in supervising the safety of the worksite. See 29 C.F.R. § 1926.451(f)(3) (scaffolds and scaffold components shall be inspected for visible defects by a competent person before each work shift). See also *Kostrzewa v. Suffolk Constr. Co.*, 73 Mass. App. Ct. 377, 382 (2008).

Whether Wegmans retained the degree of control needed to create a duty of care is a disputed factual issue that a jury must decide. Wegmans, therefore, is not entitled to summary judgment on Count I, Joseph's negligence claim, or Count III, Laura's corresponding loss of consortium claim.

The same analysis applies to the claims against Tom Story. As foreman, Story was Wegmans' agent. Whether Story owed a duty of care to Joseph is thus determined by the degree of Story's control over construction site safety. While Story's main role as foreman was to ensure the subcontractors' work was progressing on schedule, he would also correct safety issues he noticed while walking the construction site. Story also accompanied Sullivan on his inspections, and Sullivan would direct him to follow up with Muse. In addition, the Wegmans safety program document states that the position of foreman involves a number of safety-related responsibilities. The case for Story owing a duty to Joseph sits on much weaker ground, but there remains a question of material fact concerning his job duties as foreman and whether he was responsible for construction site safety. A jury must determine whether Story's more

9

limited role is enough control to create a duty of care owed to Joseph. Accordingly, Story is not entitled to summary judgment on Counts V and VIII.

### III. Plaintiffs' Claims Against Aerotek

Joseph's negligence claim against Aerotek is based solely on the theory of respondeat superior; he argues that as an "agent, servant, or employee" of Aerotek, Story "was acting in the scope of his employment under [Aerotek's] supervision, direction and control." Compl., ¶¶ 59-60. This claim fails because even though there are questions of fact regarding Story's duty to Joseph, the undisputed facts demonstrate that Aerotek owed no duty to Joseph.

Under traditional agency law, "[a]n employer is liable for torts committed by employees while acting in the scope of their employment." *Dias v. Brigham Med. Assocs., Inc.*, 438 Mass. 317, 322 (2002) (citation omitted). However, under the "borrowed servant" analysis, the question is "whether, in the particular service which [the person] is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Hohenleitner v. Quorum Health Res.*, 435 Mass. 424, 434 (2001), quoting *Coughlan v. Cambridge*, 166 Mass. 268, 277 (1896).

There is no dispute that Aerotek was Story's general employer, that it contracted with Wegmans for Story to work for Wegmans as an Assistant Project Manager/Field Technician, and that Aerotek had the right to exert some administrative control over Story (for example, Aerotek paid Story's wages). The dispositive issue for purposes of this motion, however, is whether, in the course of his duties, Story was subject to Aerotek's direction and control. The court concludes that he was not.

10

"[T]he guiding principle used in deciding cases involving assertion of vicarious liability [is] the right to control the physical conduct of the other in the performance of the service." *Hohenleitner*, 435 Mass. at 436. Here, the undisputed facts demonstrate that, in the course of his duties, Story was not subject to Aerotek's direction and control. By their agreement, Story was to work under Wegmans' direction and control, not Aerotek's. Story reported to, and received direction from, Wegmans Project Superintendent Neil Lawther. Their agreement imposed no duty on Aerotek to monitor or oversee Story, and is altogether silent on the subject of safety. Aerotek had no management personnel on site, did not direct or instruct Story regarding how his work should be performed, and did not by either contractual commitment or voluntary action undertake any duty to ensure the safety of site workers. See *Hohenleitner*, 435 Mass. at 437-438 (company that managed hospital not liable for nurse's negligent treatment of patient because although company had right to generally supervise nurse regarding scheduling and salary, there was no evidence company had right to set patient treatment policy).

There is no evidence that Aerotek maintained control over Story's construction site job performance. Aerotek, therefore, owes no duty of care to Joseph and is entitled to summary judgment on Count VI.

Aerotek is also entitled to summary judgment on Count IX, Laura's loss of consortium claim, because where an injured spouse has no viable claim, the corresponding loss of consortium claim must necessarily fail as well. See *Sena v. Commonwealth*, 417 Mass. 250, 264 (1994).

## IV.   Plaintiffs' Claims Against Third Avenue

Finally, Joseph alleges that, as owner and lessor of the building site, Third Avenue is also liable for his injuries. To proceed on this claim, Joseph must show that Third Avenue owed him

11

a duty to maintain a safe construction site on its property, which is a question of law. *Davis* v. *Westwood Grp.*, 420 Mass. 739, 742-743 (1995). The court concludes that Third Avenue owed Joseph no such duty.

"Liability for injury or damage cause by the dangerous or defective condition of premises depends upon 'control of the offending instrumentality, either through ownership or otherwise.'" *Marsden* v. *Eastern Gas & Fuel*, 7 Mass. App. Ct. 27, 29 (1979), quoting *Frizzell* v. *Metropolitan Coal Co.*, 298 Mass. 189, 191 (1937). A lessor of commercial premises has a duty to keep all or part of the premises safe only if it undertakes to do so in the lease or if it has control over the area. *Chausse* v. *Coz*, 405 Mass. 264, 266 (1989). Here, is it undisputed that in the lease between the parties, Third Avenue expressly contracted exclusive control of the property to Wegmans. Third Avenue was not involved in the construction of the supermarket in any way, and retained no control over the construction work that took place on its property.

There is no evidence that Third Avenue maintained control of the premises. As a matter of law, therefore, Third Avenue owed no duty of care to Joseph and summary judgment on Count II must be allowed for Third Avenue.

As noted above in Part III, since summary judgment on Count II is appropriate, summary judgment on Count IV, Laura's corresponding claim against Third Avenue for loss of consortium, is equally appropriate. See *Sena*, 417 Mass. at 264.

## ORDER

For the foregoing reasons, Aerotek and Tom Story's motion for summary judgment is **ALLOWED** for Aerotek and **DENIED** for Tom Story. Wegmans' motion for summary judgment is **DENIED**, and Third Avenue's motion for summary judgment is **ALLOWED**. **JUDGMENT FOR DEFENDANT** shall enter on Count II, Count IV, Count VI, and Count IX.

*[signature: Joshua I. Wall]*

Joshua I. Wall
Justice of the Superior Court

October 15, 2018