UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FIREMEN'S INSURANCE COMPANY OF
WASHINGTON, D.C.,

                                   Plaintiff,

                                                              Case # 19-CV-6513-FPG
v.
                                                              DECISION AND ORDER

ACE AMERICAN INSURANCE COMPANY, et al.,

                                   Defendants.

<hr>

## INTRODUCTION

This case concerns insurance-coverage and indemnity disputes related to a construction-site accident occurring in Massachusetts in 2014.  Currently before the Court are three motions for summary judgment filed by (1) Defendant and counterclaimant Ace American Insurance Company ("Ace American"), ECF No. 66; (2) Plaintiff Firemen's Insurance Company of Washington, D.C. ("Firemen's Insurance") and Cross-Defendant MP Masonry Inc. ("MP Masonry"), ECF No. 82; and (3) Defendant and cross-claimant Aerotek, Inc. ("Aerotek") and Defendant Thomas J. Story, ECF No. 83.  The Court resolves all of the motions in this omnibus order.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable

to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## DISCUSSION

In August 2015, Joseph and Laura Holguin brought a civil action in Massachusetts for injuries Mr. Holguin sustained while working at a construction site in July 2014.  The project involved the construction of a new grocery store for Wegmans Food Markets, Inc.  Mr. Holguin— who was a mason on the project—alleges that he sustained serious injuries when a scaffold on which he was walking collapsed.  He and his wife brought tort claims against a number of individuals and entities involved in the project.  *See generally* ECF No. 66-3 at 25-40 (copy of amended complaint).

The present litigation concerns issues of indemnity and insurance coverage for two of the defendants in the Massachusetts action: Tom Story and Wegmans.

Story acted as a foreman on the construction project.  His work on the project was governed by a 2012 staffing agreement between Wegmans and Aerotek.  Under that agreement, Aerotek agreed to provide workers for Wegmans in connection with the project.  *See generally* ECF No. 83-4 at 2-8.  Story was one of the workers Aerotek provided under the arrangement.  Aerotek and Wegmans agreed that Story would be treated as an employee of Aerotek and an independent contractor of Wegmans.  *Id.* at 6.  Aerotek is presently covering Story's defense costs in the Massachusetts action.

The staffing agreement between Wegmans and Aerotek also required Aerotek to (1) maintain liability insurance that included Wegmans as an additional insured, and (2) indemnify

Wegmans for any claims or liabilities it may "suffer or incur as a result of [Aerotek's] negligent Services." *Id.* at 3.  Pursuant to its insurance obligation, Aerotek procured an excess commercial general liability policy from Ace American.

Separately, Wegmans and MP Masonry entered into a contract wherein MP Masonry would provide masonry services for the construction project.  *See generally id.* at 20-79.  Mr. Holguin was an employee of MP Masonry and was providing those services to Wegmans at the time he was injured.

Under the masonry contract, MP Masonry agreed to (1) obtain liability insurance for itself and Wegmans, and (2) indemnify Wegmans and its "agents, employees and representatives" from claims of "personal injury to [MP Masonry's] employees . . . arising out of or resulting directly or indirectly from the performance of the Work . . . .  *Id.* at 55-56, 69-70.  Firemen's Insurance provided the required insurance to MP Masonry.  Currently, Firemen's Insurance is providing for the costs for Wegmans's defense in the Massachusetts action.

In the present litigation, Firemen's Insurance brings six claims against Aerotek and Ace American; Ace American brings two counterclaims against Firemen's Insurance; and Aerotek brings two cross-claims against MP Masonry.  The parties' claims can be reduced to the following issues:

1.  Must MP Masonry indemnify Story in the Massachusetts action based on the indemnity provision of the masonry contract? (Claim 2 and Cross-Claims 1 & 2)

2.  Must Firemen's Insurance indemnify Story and contribute to his defense based on the policy it issued to MP Masonry? (Claim 1)

3.  Must Aerotek indemnify Wegmans and contribute to its defense based on the indemnification provision of the 2012 staffing agreement?  (Claim 4)

4.  Must Aerotek and/or Ace American indemnify Wegmans and contribute to its defense pursuant to the commercial general liability policy Ace American issued to Aerotek? (Claims 3 & 5, Counterclaims 1 & 2)

5. Did Aerotek breach the 2012 staffing agreement by failing to obtain sufficient insurance? (Claim 6).

The Court addresses each of these issues below, except for the third issue, which pertains to indemnity under the 2012 staffing agreement.  During summary judgment briefing, Firemen's Insurance and MP Masonry conceded that a condition precedent for such indemnity had not been satisfied, and therefore Aerotek is not under any obligation to indemnify Wegmans.  *See* ECF No. 85 at 7; ECF No. 83-2 at 21-23.  Therefore, summary judgment is granted in Aerotek's favor on Claim 4 of Firemen's Insurance's amended complaint.

The Court now turns to the disputed issues.

**I.   Must MP Masonry indemnify Story and contribute to his defense costs under the indemnity provision of the masonry contract?**

In its cross-claims against MP Masonry, Aerotek argues that the masonry contract obligated MP Masonry to indemnify and defend Wegmans' agents, employees, and representatives, and that Story fits within one of those categories.  Conversely, in its second claim, Firemen's Insurance contends that Story does not fall within any of those categories.  The Court agrees with Firemen's Insurance and MP Masonry.

As noted above, the masonry contract includes a broad indemnification provision:

> To the fullest extent permitted by law, [MP Masonry] shall defend, indemnify and hold harmless [Wegmans] and its agents, employees and representatives from and against all liabilities, claims, damages, loss and expenses, including, but not limited to, claims of . . . personal injury to [MP Masonry's] employees, agents, subcontractors or third parties . . . arising out of or resulting directly or indirectly from the performance of the Work . . . .

ECF No. 83-4 at 55-56.

The masonry contract is governed by New York law.  *See id.* at 72.  In New York, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly

construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989).   "The promise [to indemnify] should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.*   As one court has remarked, New York courts are "particularly strict" when it comes to contractual indemnification. *SecurityNational Mortg. Co. v. Aurora Bank FSB*, No. 11-CV-434, 2014 WL 12600129, at *13 (D. Utah May 6, 2014).

*Tonking v. Port Authority of New York & New Jersey*, 821 N.E.2d 133 (N.Y. 2004), is illustrative.   That case arose out of a renovation project overseen by the Port Authority of New York and New Jersey.   *See Tonking*, 821 N.E.2d at 488.   An employee of a ventilation subcontractor was injured on the job and sued the Port Authority and another contractor who provided "construction management services for the project."   *Id.*   The management contractor, in turn, brought a claim against the ventilation subcontractor, arguing that it was entitled to indemnification based on a clause in the contract between the Port Authority and the ventilation subcontractor.   The clause read:

> [The subcontractor] shall indemnify the Authority against [certain losses] to the extent caused by the negligent acts or omissions of [the subcontractor], including all expense incurred by it in the defense, settlement or satisfaction thereof . . . .   The provisions of this numbered clause shall also be for the benefit of the *Commissioners, officers, agents and employees of the Authority*, so that they shall have all the rights which they would have under this numbered clause if they were named at each place above at which the Authority is named, including a direct right of action against [the subcontractor] to enforce the foregoing indemnity.

*Id.* at 135 (emphasis added).   The management contractor asserted that it was an "agent" of the Port Authority and thus fell within the indemnification clause.   *Id.*

The New York Court of Appeals rejected that argument.   It noted that the evidence was mixed as to whether the management contractor qualified as an "agent" under the contract:

5

although the Port Authority exercised "supervision and control" over the contractor's work, the contract itself never expressly identified the contractor as an "agent" or as a potential indemnitee—despite that fact that the contract "refer[red] to the 'construction manager' more than 130 times." *Id.* Rather, the contract appeared to treat "agent" and "construction manager" as "separate classifications." *Id.* The Court of Appeals reasoned that "the language of the parties is not clear enough to enforce an obligation to indemnify" and stated it was "unwilling to rewrite the contract and supply a specific obligation the parties themselves did not spell out." *Id.*

As the Court understands *Tonking* and related case law, it is not enough that an indemnification clause might be reasonably read to cover an individual; it must be unambiguous that the individual is covered. *See, e.g.*, *Lipshultz v. K & G Indus.*, 294 A.D.2d 338, 339 (N.Y. App. Div. 2002) (where contract provided for indemnification to owner's "agents," the fact that a general contractor could "theoretically" be considered the owner's statutory agent was insufficient to require indemnification); *A. R. Mack Constr. Co. v. Patricia Elec.*, 5 A.D.3d 1025, 1027 (N.Y. App. Div. 2004) (same). That standard is demanding, and it is particularly difficult to meet if the parties employ general language like "employees" or "agents" to refer to potential indemnitees. The New York Court of Appeals has cautioned that "[w]ords in a contract are to be construed to achieve the apparent purpose of the parties," and even if a term can be interpreted in a "larger sense," it " should be restrained to the particular occasion and to the particular object which the parties had in view." *Hooper*, 548 N.E.2d at 905. "This is particularly true with indemnity contracts," as courts must avoid "reading into [the contract] a duty which the parties did not intend to be assumed." *Id.*

The risk of an overly broad reading is present here, as words like "agents," "employees," and "representatives" are ambiguous and can readily be interpreted in a manner not intended by

the parties.  Indeed, one New York court has noted that the word "agent" is often a "referentially treacherous term" that fails to clearly manifest the parties' intentions.  *Tonking v. Port Auth. Of N.Y. & N.J.*, 2 A.D.3d 213, 214 (N.Y. App. Div. 2003).  The question here is whether, despite the inherent ambiguity of the terms themselves, the masonry contract as a whole states in "unmistakable terms" that Mr. Story is a covered indemnitee.  *See id.*  The Court answers that question in the negative.

The language of the indemnification clause is general—the contract uses the terms "employees," "agents," and "representatives" without any further clarification.  Thus, it is unclear whether the parties intended to extend indemnification to a person in Story's position—namely, a worker who acts under Wegmans' direction and control but is technically classified as an independent contractor of Wegmans and the employee of contractor.  *See* ECF No. 83-4 at 6 (stating that the relationship between Wegmans and Aerotek's employees was "that of an independent contractor" and that "[u]nder no circumstances shall Wegmans be considered the employer of . . . any [of Aerotek's employees]").  Furthermore, elsewhere in the masonry contract the parties refer to "other contractors" and "separate contractors" who perform work on the project.  *See id.* at 57, 58.  If the parties had intended to extend indemnification to the employees of other contractors, they could have simply used those phrases rather than the amorphous terms they did employ.

In the absence of express language identifying Mr. Story (or any contractor's employee) as a potential indemnitee, Aerotek relies on general principles of agency and Mr. Story's job responsibilities to argue that he was an agent, employee, or representative of Wegmans.  *See* ECF No. 83-2 at 7-14. But general terms like "agent" and "employee" can be interpreted broadly or narrowly, and Aerotek fails to argue why its interpretation of those terms is the only reasonable

one. *See Tonking*, 2 A.D.3d at 214.  Perhaps, as Aerotek argues, Wegmans and MP Masonry intended that MP Masonry would be obligated to indemnify any individual who could be deemed to be Wegmans' agent under New York or Massachusetts agency law.  Or perhaps they intended to require indemnification only to those individuals who Wegmans expressly treated as its agents, employees, and representatives (*i.e.*, those on Wegmans' payroll), to the exclusion of individuals ostensibly employed by contractors.  That ambiguity defeats Aerotek's claim for indemnification.

In short, if Wegmans and MP Masonry had intended to extend indemnification to Mr. Story, they could have done so "in unmistakable terms," rather than relying on frequently disputed language like "agent," "employee," or "representative."  *See id.* ("[H]ad the parties . . . intended for [the indemnitor] to assume an obligation to indemnify a [third-party contractor], they would have manifested their intention in unmistakable terms instead of using the general, often referentially treacherous term "agent," particularly . . . because the existence of an agency relationship . . . would, predictably, have been disputed."); *see also Tonking*, 821 N.E.2d at 135 ("If the parties intended to cover [the contractor] as a potential indemnitee, they had only to say so unambiguously.").

Because the parties to the masonry contract did not "clearly manifest" their intention, Mr. Story is not entitled to indemnification.  Consequently, MP Masonry is not obliged to indemnify or contribute to the defense of Mr. Story under the masonry contract.  Summary judgment is therefore granted in MP Masonry's favor on Aerotek's cross-claims and in Firemen's Insurance's favor on its second claim.

**II.     Must Firemen's Insurance indemnify Story and contribute to his defense based on the policy it issued to MP Masonry?**

In its first claim for declaratory relief, Firemen's Insurance argues that Story does not qualify as an insured under the policy it issued to MP Masonry.  *See* ECF No. 71 at 14.  Aerotek argues that this claim must be dismissed because it is not ripe.  The Court agrees.

"[B]efore a court may issue any declaratory order [under the Declaratory Judgment Act], it must satisfy itself that the matter presents an actual case or controversy."  *U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp.*, 321 F. Supp. 3d 313, 316 (E.D.N.Y. 2018).  "A dispute is not justiciable under this 'case or controversy' standard unless it is definite and concrete, touching the legal relations of parties having adverse legal interests." *United Fin. Cas. Co. v. Paddon*, 248 F. Supp. 3d 368, 372 (N.D.N.Y. 2017) (internal quotation marks omitted).  "This standard is not satisfied by a dispute of a hypothetical or abstract character."  *Id.* (internal quotation marks omitted).  Put differently, "[a]n actual controversy does not exist where there is no evidence or indication that the main theory on which the plaintiff seeks declaratory judgment is in dispute between the parties."  *Id.*

Here, Aerotek states that it has never contested Firemen's Insurance's disclaimer of coverage as to Mr. Story.  *See* ECF No. 83-2 at 18.  Mr. Story "takes no position on the coverage issue raised by Count I of the Amended Complaint.  Neither does Aerotek."  *Id.*; *see also* ECF No. 87 at 7 ("Mr. Story has never claimed he was covered by the Fireman's policy . . . and he is not claiming that now.").  Firemen's Insurance fails to offer any opposing allegations that would suggest that Aerotek, Mr. Story, or any other party challenges Firemen's Insurance's disclaimer of coverage.

Because there is no actual dispute over the parties' legal rights and obligations as it pertains to coverage for Mr. Story, there is no case or controversy.  *Accord Paddon*, 248 F. Supp. 3d at 373

(no subject matter jurisdiction where "[n]one of [the] allegations suggest that there is a dispute between the parties as to whether [the insurer] is obligated to defend or indemnify Defendants in the [underlying] lawsuit"); *Orion Plumbing*, 321 F. Supp. 3d at 319-20 (no subject matter jurisdiction in declaratory judgment action brought by insurer, where "the complaint [did] not contain any allegation that these Defendants dispute whether they are entitled to a defense"). Therefore, the claim must be dismissed for lack of subject matter jurisdiction. *See Orion Plumbing*, 321 F. Supp. 3d at 319-20.

**III.  Must Aerotek and/or Ace American indemnify Wegmans and contribute to its defense pursuant to the commercial general liability policy Ace American issued to Aerotek?**

Firemen's Insurance identifies two endorsements in the Ace American policy that may provide coverage to Wegmans.  These endorsements are labelled as Endorsement 5 and Endorsement 10.

**a.  Endorsement 5**

Endorsement 5 adds as an additional insured any entity "whom [Aerotek] has agreed to include as an additional insured under a written contract."  ECF No. 66-3 at 94.  But critically, the entity is only an additional insured "with respect to liability for "bodily injury" . . . caused, in whole or in part, by [Aerotek's] acts or omissions or the acts or omissions of those acting on [Aerotek's] behalf" in the performance of Aerotek's "ongoing operations."  *Id.*  Furthermore, the coverage afforded to the additional insured "will not be broader than that which [Aerotek is] required by the contract or agreement to provide for such additional insured."  *Id.*

Based on the Court's review of the case law interpreting the language of Endorsement 5, it is clear that Wegmans cannot obtain indemnity coverage.  This type of endorsement is intended to provide coverage to an additional insured where the named insured (or one acting on its behalf)

proximately caused, in whole or in part, the "bodily injury" at issue. *See, e.g.*, *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 482 (N.Y. 2017) ("[C]overage for additional insureds is limited to situations where the [named] insured is the proximate cause of the injury."); *James G. Davis Constr. Corp. v. Erie Ins. Exchange*, 126 A.3d 753, 762 (Md. Ct. Spec. App. 2015) (concluding, based on the same policy language, that the insurer had a duty to defend the additional insured "against any liability that could potentially be proximately caused by [the named insured's] acts"); *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 305 F. Supp. 3d 223, 230 (D. Mass. 2018) (interpreting same language under Massachusetts law).[1]

Applied here, the endorsement only provides coverage if Aerotek or one acting on its behalf caused, in whole or in part, the bodily injury for which Wegmans may be held liable. But it is undisputed that Aerotek was never alleged to have directly acted in a manner that caused Mr. Holguins' injuries. In addition, while Story was ostensibly an employee of Aerotek, the Massachusetts Superior Court rejected, on summary judgment, the theory that Story was acting as Aerotek's agent in connection with his "construction site job performance." ECF No. 83-4 at 121. Instead, Story was acting as an agent of Wegmans. *Id.* at 119.

Thus, put into the language of the endorsement, Wegmans' potential liability in the Massachusetts action does not involve liability for bodily injuries caused by Aerotek's own acts or the acts of someone acting on its behalf. To the extent Story caused an injury for which Wegmans may be held liable, the Massachusetts Superior Court made clear that Story caused the injury while acting on behalf of Wegmans, not Aerotek. *See* ECF No. 83-4 at 118 (finding negligence claim against Wegmans viable because "Wegmans—through Sullivan, Lawther, or

---

[1] For the sake of completeness, the Court refers to the laws of New York (the law governing the staffing agreement), Massachusetts (the situs of the injury), and Maryland (the state where the policy was issued).

Story—had some responsibility for jobsite safety" and "had an opportunity to stop or prevent the use of unsafe scaffolding"). To provide coverage to Wegmans under these circumstances would be contrary to the plain language and purpose of the endorsement. *See Burlington*, 79 N.E.3d at 485 (stating that such language is "intended to provide coverage for an additional insured's vicarious or contributory negligence, and *to prevent coverage for the additional insured's sole negligence*" (emphasis added)). Therefore, Endorsement 5 does not cover Wegmans as an additional insured.[2]

### b. Endorsement 10

Endorsement 10 provides coverage to entities that the insured is "required to include as an additional insured under this policy because of a written contract" that qualifies as an "insured contract." ECF No. 66-3 at 99. It goes on to state that any coverage under Endorsement 10 "shall be excess over any other valid and collectible insurance" unless "the written contract specifically requires that this insurance apply on a primary or non-contributory basis." *Id.*

In the course of briefing, Firemen's Insurance's position appears to have shifted. Initially, it argued that Endorsement 10 could provide coverage, and therefore Claim 5 of its amended complaint is viable. *See* ECF No. 78 at 11-15. But subsequently, Firemen's Insurance conceded that Claim 5 is not viable. *See* ECF No. 85 at 7.

---

[2] Firemen's Insurance cannot recover defense costs from Ace American under Endorsement 5 because Ace American's policy "does not apply to defense, investigation, settlement or legal expenses . . . arising out of an 'occurrence.'" ECF No. 66-3 at 80. Furthermore, the "ultimate net loss" that Ace American would pay an insured under the policy excludes "any of the expenses incurred by the insured . . . in connection with defending the claim or 'suit.'" *Id.* at 89. In seeking contribution, Firemen's Insurance fails to articulate how it can recover defense costs that, by the plain terms of the policy, Wegmans was never entitled to obtain, and Ace American was never obliged to cover. *See Ins. Co. of State v. Great N. Ins. Co.*, 45 N.E.3d 1283, 1286 (Mass. 2016) (stating that equitable contribution applies where multiple insurers share equal contractual liability for "*the discharge of an obligation*" (emphasis added)).

In light of the later concession, it appears there is no dispute that Endorsement 10 cannot apply to provide coverage to Wegmans or require Ace American or Aerotek to contribute to Wegmans' defense.  The Court need not further analyze this endorsement.

### c.  Summary

The Court has concluded (1) that under Endorsement 5, Wegmans is not entitled to liability coverage or defense costs; (2) that, in light of Firemen's Insurance's concessions, no liability coverage or defense costs are available under Endorsement 10.  Thus, Ace American is entitled to summary judgment on both of its counterclaims to that extent.  Conversely, Ace American and Aerotek are entitled to summary judgment on Claims 3 and 5 in Firemen's Insurance's amended complaint.[3]

## IV.  Did Aerotek breach the 2012 Staffing Agreement by Failing to Procure Sufficient Insurance?

Claim 6 of the amended complaint is that under the 2012 staffing agreement, Aerotek was obliged to procure insurance that would have provided primary coverage to Wegmans under these circumstances.  Because Aerotek did not do so, it breached the agreement.  *See Schumann v. City of New York*, 242 A.D.2d 616, 617 (N.Y. App. Div. 1997) ("It is well-settled law that where one party to a contract breaches its obligation to provide the insurance coverage required under the contract, [] the breaching party is liable for the resulting damages.").  Aerotek disputes that it breached the agreement: it contends that the agreement did not require it to "procure insurance covering the [work] to be performed by temporary workers like Tom Story."  ECF No. 83-2 at 25.

The insurance provision reads:

During the term of this Agreement, Vendor [*i.e.*, Aerotek] will maintain, without direct cost to Wegmans, insurance coverages of the type and in the amounts set

---

[3] Firemen's Insurance also raises an alternative theory that it makes in connection with Claim 3, ECF No. 85 at 5-6, but the Court addresses it below.

forth in <u>Attachment 1</u>, provided by insurance companies authorized to do business in the State of New York and any other state where the Services are to be performed, and covering the Services to be performed under this Agreement. . . .  Wegmans shall be included as an additional insured on the General Liability, Automobile and Excess/Umbrella Insurance policies . . . .  This insurance coverage will be primary to any and all other insurance applicable to this Agreement, but only when resulting from Aerotek's sole negligence, except with respect to workers' compensation matters, which are Aerotek' [sic].  The kinds and amounts of insurance that are required hereunder are set forth in <u>Attachment 1</u>.

ECF No. 66-3 at 8.  Attachment 1 is a chart that identifies the types of insurance Aerotek is to

obtain—among them are a commercial general liability insurance policy (with a $1,000,000 limit)

and excess/umbrella liability policy (with a $4,000,000 limit).  *Id.* at 14.

Aerotek argues that the insurance required under the agreement only needed to cover the

"Services" (with a capital "S") that Aerotek was to perform.  In its view, "Services" should be

interpreted to refer narrowly to Aerotek's tasks of "selecting and assigning temporary workers,"

not to the underlying work that its workers performed for Wegmans.  ECF No. 83-2 at 25.

Therefore, Aerotek was not required to obtain any insurance covering the work Story performed

for Wegmans.

The Court is not convinced.  The only reasonable interpretation of the staffing agreement

is that "Services" includes the underlying work Aerotek's employees perform for Wegmans.

Under New York law—which governs the 2012 staffing agreement, ECF No. 66-3 at 10—

"[i]t is axiomatic . . . that the fundamental objective of contract interpretation is to give effect to

the expressed intentions of the parties."  *Abakan, Inc. v. Uptick Capital, LLC*, 943 F. Supp. 2d 410,

414 (S.D.N.Y. 2013) (internal brackets and quotation marks omitted).  "The best evidence of what

parties to a written agreement intend is what they say in their writing."  *Id.*  "In a dispute over the

meaning of a contract, the threshold question is whether the contract is ambiguous."  *Id.* (internal

quotation marks omitted). "Whether a contract is ambiguous is a question of law for the Court." *Id.*

A contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Id.* "[A] written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Id.* "[I]f the terms of the contract are not ambiguous, the dispute is properly resolved on summary judgment." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 453 (S.D.N.Y. 2015).

The staffing agreement defines "Services" as "the supplemental staffing services" to be provided by Aerotek. *Id.* at 7. Those "Services" are specified in subsidiary "Statements of Work" that the parties intend to execute with respect to individual workers. As part of its "Services," Aerotek must "select and assign [its] employees . . . to perform services for Wegmans as needed by Wegmans from time to time, under Wegmans [sic] direction and supervision in an environment controlled by Wegmans." *Id.* Each Statement of Work will "include a description of the Services to be provided, including: the specific skills, experience, and training required for the services to be rendered by [Aerotek's employees]." *Id.*

While not a model of clarity, this section appears to indicate that the "Services" Aerotek provides are specified in the "Statements of Work," and, in turn, the "Statements of Work" specify the work that Aerotek's employees are to provide to Wegmans. In other words, the "Service" that Aerotek performs includes the work its employees do on behalf of Wegmans.

This interpretation is reasonable in light of how the term "Services" is used elsewhere in the staffing agreement. In one provision, Wegmans agrees to indemnify Aerotek and its employees for "any loss or damages . . . caused by the negligent acts . . . of Wegmans' personnel while

[Aerotek] *is performing Services for Wegmans at a Wegmans' site under this Agreement*." *Id.* at 9 (emphasis added).  This provision necessarily assumes that Aerotek and its employees will be performing "Services" for Wegmans on Wegmans property, which makes sense if "Services" include the underlying work Aerotek employees perform.  Aerotek does not explain how this provision would make sense if "Services" were limited to "selecting and assigning temporary workers," as those tasks are presumably not done at the construction site itself.

In another provision, Aerotek agrees to indemnify Wegmans for any losses it sustains "as a result of [Aerotek's] negligent *Services*." *Id.* at 8 (emphasis added).  The clause goes on to provide that indemnity extends to claims "by a third party for personal injury . . . caused by the negligent acts of any [Aerotek employee] *while performing services under this Agreement*." ECF No. 66-3 at 8 (emphasis added).  In other words, indemnification applies to third-party claims resulting from Aerotek's "negligent Services," which include negligent "services" that Aerotek employees perform for Wegmans.

Aerotek also agreed to a number of warranties in the staffing agreement.  It warranted that "the *Services* will be performed in a workmanlike and professional manner"; that it had the "personnel necessary to provide these *Services* in a safe, efficient and competent manner"; that its employees would be "licensed or certified under applicable laws"; that it would obtain "any temporary permits or licenses required in connection with the *Services* to be rendered"; and that it was solely responsible for the payment of wages "in connection with the *Services*." *Id.* at 9 (emphases added).  All of these provisions are intelligible if "Services" include the work Aerotek's employees performed for Wegmans: Aerotek warranted that such work would be performed competently; that its employees were qualified for the work; that its employees were properly

licensed or certified to perform the work; and that it would be responsible for paying its employees while they performed the work.

Taking these clauses together, the "Services" that Aerotek provided were not merely those of a headhunter—finding and passing along new workers to Wegmans—but a contractor who agreed to complete work for Wegmans through its qualified, screened, and trained workforce.[4] *See* ECF No. 66-3 at 11 ("Wegmans acknowledges that [Aerotek] incurs substantial expenses for recruiting, testing, training, and retaining its [employees] . . . ."). Accordingly, the only reasonable interpretation of the provision requiring Aerotek to obtain insurance "covering the Services to be performed under this Agreement" is that Aerotek was obliged to maintain insurance that would cover the work its employees performed for Wegmans.[5]

Regardless, Aerotek also argues that it was not obliged to provide Wegmans with *primary* insurance coverage for the types of claims raised in the Massachusetts action. The insurance provision states that the coverage Aerotek was to procure "will be primary to any and all other insurance applicable to this Agreement, *but only when* resulting from Aerotek's sole negligence." ECF No. 66-3 at 8 (emphasis added). As Aerotek reads this clause, it was only required to procure primary liability insurance for Wegmans for claims resulting from its sole negligence. And based on that language, Aerotek asserts that it was never required to provide primary insurance to Wegmans in the Massachusetts action, since "Wegmans [was] sued for the alleged negligence of

---

[4] To be sure, the Massachusetts Superior Court found that in the performance of the underlying work, Story was an agent of Wegmans, not Aerotek. But here, the Court's task is to determine the parties' intent as expressed in the agreement, not to evaluate the agency relationships that existed in fact for purposes of tort liability.

[5] Aerotek correctly points out that the 2012 staffing agreement makes a distinction between the "Services" (with a capital "S") that Aerotek is to provide and the "services" (with a lower-case "s") that its employees are to perform for Wegmans. *See* ECF No. 66-3 at 9. But, reading the contract as a whole, Aerotek's "Services" and its employees' "services" cannot be read as mutually exclusive; rather, Aerotek's "Services" encompass a number of duties, one of which is its employees' "services" to Wegmans.

Wegmans and its agents—*not the negligence of Aerotek*."  ECF No. 87 at 10.  Therefore, Firemen's Insurance cannot establish a breach of contract that would entitle it to the relief it seeks.

Firemen's Insurance does not directly challenge Aerotek's reasoning or offer a contrary interpretation of the "sole negligence" clause.  Instead, if offers an alternative theory unrelated to its claim for breach of contract.  It contends that, because Aerotek's policy with Ace American includes a self-insured retention, New York law now treats Aerotek as an insurer "having the same obligations as the required commercial general liability insurance that it forewent."  ECF No. 85 at 5-6.  Indeed, it goes as far to say that its breach of contract claim is moot in light of this theory.  *See id.* at 7.

Yet, whether framed in terms of breach of contract or in terms of this alternative theory, the basic question remains the same: given the "sole negligence" clause, was Aerotek required to procure *primary* commercial general liability insurance for Wegmans covering the types of claims the Massachusetts action presents?  Only then could Aerotek be said to have "forewent" required insurance.  But Firemen's Insurance offers no meaningful argument on this question.  In its briefing, Firemen's Insurance does not even reference the "sole negligence" clause, let alone dispute Aerotek's interpretation of it.[6]

The Court finds that Firemen's Insurance has abandoned Claim 6 (whether framed in terms of breach of contract of its alternative theory), given that Firemen's Insurance has failed to respond to Aerotek's assertion that it was not obliged to obtain primary liability insurance in light of the

---

[6] In its Rule 56 Statements of Facts, Firemen's Insurance does refer to the "sole negligence" clause, stating that it disputes "any implied assertion that [such] provision has any application for determining priority of coverage as between the Ace American policy and the Firemen's policy. The Firemen's policy is not other insurance applicable to the Temporary Labor Procurement Agreement between Aerotek and Wegmans."  ECF No. 78-1 at 2.  Firemen's Insurance never explains or develops this argument any further, and it is not incumbent upon the Court to do so.  *See Aiello v. Stamford Hosp.*, 487 F. App'x 677, 678 (2d Cir. 2012) (summary order) ("The premise of our adversarial system is that [federal] courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

"sole negligence" clause.  "When a party opposing summary judgment fails to respond to the moving party's argument on a claim, the Court may deem the claim abandoned."  *Grassel v. Dep't of Educ. of City of New York*, No. 12-CV-1016, 2015 WL 5657343, at *9 (E.D.N.Y. Sept. 24, 2015).  That rule applies here, and compels a ruling in Aerotek's favor.

## CONCLUSION

For the reasons stated, Ace American's motion for summary judgment (ECF No. 66) is GRANTED; Firemen's Insurance and MP Masonry's motion for summary judgment is GRANTED IN PART and DENIED IN PART (ECF No. 82); and Story and Aerotek's motion for summary judgment (ECF No. 83) is GRANTED IN PART and DENIED IN PART.  All of the parties' claims are hereby resolved.  The Clerk of Court is directed to enter judgment accordingly and close the case.

IT IS SO ORDERED.

Dated: June 5, 2020
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief, United States District Court